**SCHMITT v. TOBIN et al.**

**No. 2598.**

District Court, D. Nevada.

July 8, 1935.

See, also, 15 F.Supp. 38.

Platt & Sinai, of Reno, Nev., for plaintiff.

Ayres, Gardiner & Pike and N. J. Barry, all of Reno, Nev., and Brobeck, Phleger & Harrison, of San Francisco, Cal., for defendants.

NORCROSS, District Judge.

This suit was originally brought in the Second Judicial District Court of the state of Nevada, in and for the county of Washoe, by the superintendent of banks of the state of Nevada. On petition of defendants, the action was removed to this court. The Crocker First National

36

Bank of San Francisco, appearing specially therefor, has moved this court to dismiss the complaint as to it and to quash the service of summons on three grounds:

(1) That it is a national bank located outside the state of Nevada, namely, in the state of California, and that under the provisions of the National Banking Act no action can be brought against it outside of the state of California; (2) that it was not doing business in the state of Nevada at the time of the issuance and service of process in this action; (3) that service upon John V. Mueller was not service upon a business or managing agent of this defendant.

With respect to the subject-matter of venue, title 12 U.S.C.A., chapter 2, National Banks, § 94, provides:

"*Venue of suits.* Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

The movant, Crocker First National Bank, is established and located in the city and county of San Francisco, state of California. The question here presented is whether in view of the provisions of the section of the statute quoted, a national bank, without its consent, can be sued in a state or federal court without the state of its location and establishment. No authorities are cited expressly holding that a national bank may be so sued. Counsel for plaintiff cite the case of Farmers' & Merchants' Bank of Catlettsburg, Ky., v. Federal Reserve Bank of Cleveland, Ohio, et al. (D.C.) 286 F. 566. Federal Reserve Banks are not national bank associations such as are authorized and controlled under the provisions of title 12, chapter 2, of the United States Code (12 U.S.C.A. c. 2, § 21 et seq.), but are created under a separate and distinct chapter, being chapter 3 of that Code (12 U.S. C.A. c. 3, § 221 et seq.). Said chapter 3 contains no similar provision such as that relating to national bank associations quoted, supra. Federal Reserve Banks are established in districts which may and usually do include several states. The authority cited is not in point upon the question here presented. American Bank & Trust Co. v. Federal Reserve

Bank, 256 U.S. 350, 41 S.Ct. 499, 65 L.Ed. 983.

There are other provisions of the National Bank Act which may have some bearing upon the question here presented—the proper construction of section 94, supra.

Section 24 reads:

"§ 24. *Corporate powers of associations.* * * *

"Fourth. To sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons."

Section 81 reads:

"§ 81. *Place of business.* The usual business of each national banking association shall be transacted at an office or banking house located in the place specified in its organization certificate."

Section 41 of the Judicial Code and Judiciary (28 U.S.C.A.) also provides:

"Section 41. *Original jurisdiction.* The district courts shall have original jurisdiction as follows:

"(1) * * *

"(16) Suits against national-banking associations. Sixteenth. Of all cases commenced by the United States, * * * and all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located."

■ A provision similar to that of section 94 has been included in the several statutes dealing with national banks since the adoption of the original act of 1863. 12 U.S.Stat. 665, 681, § 59. For a period of seventy years, the statute has been in force without material change with no .decision of any court holding that a national bank. may be sued in another state than that of its domicile. This fact alone is strongly indicative that it has been generally accepted that a national bank by reason of the statutory provisions controlling was not liable to suit excepting in the state of its location. While recognized as a corporation and a citizen of the state of its domicile, it is a national agency subject only to control of the Congress. Davis v. Elmira Sav. Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700; Clement ·National Bank v. Vermont, 231 U.S. 120, 34 S.Ct. 31, 58 L.Ed. 147. While

the Supreme Court has never been required to expressly rule upon the question here presented, in First National Bank of Charlotte v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 38, 33 L.Ed. 282, that court said:

"This exemption of national banking associations from suits in state courts, established elsewhere than in the county or city in which such associations were located, was, we do not doubt, prescribed for the convenience of those institutions, and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts."

In the case of American Bank & Trust Co. v. Federal Reserve Bank, supra, the court said:

"But we agree with the Court below that the reasons for localizing ordinary commercial banks do not apply to the Federal Reserve Banks * * * and that the phrase 'national banking associations' does not reach forward and include them. That phrase is used to describe the ordinary commercial banks." 256 U.S. 350, at page 357, 41 S.Ct. 499, 500, 65 L.Ed. 983.

In the comparatively recent (1923) case of Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 312, 67 L.Ed. 594, which was a suit brought in a federal court in the state of New York against a national bank established in the city of New Orleans, state of Louisiana, and service obtained upon the president of the bank, the court held that notwithstanding the fact the defendant bank was doing "a large New York business" transacted for it by its correspondent banks, it was not doing business in that state within the purview of the National Bank Act, and affirmed the decree of dismissal upon that ground. Upon the question of whether a national bank could be sued outside the state of its domicile it did not express an opinion, saying:

"Whether a national bank could under any circumstances be subjected, without its consent, to suit in a state or district, other than that in which it is authorized to locate its banking house, we have no occasion to consider in this case."

In the latest reported case dealing with the question under consideration, Raiola v. Los Angeles First National Trust & Savings Bank, 133 Misc. 630, 233 N.Y.S. 301, 305, Judge Noonan, after reviewing the cases both federal and state at some length, in his opinion said:

"The federal cases which have been discussed hold that the language of the section is mandatory and that in a proper case an action against a national bank must be instituted in a court where it is located."

In the Raiola Case, supra, the defendant national bank maintained an office at No. 52 Wall street, New York City, presided over by one of its vice presidents upon whom summons was served. The court also held it was not doing a business in the state of New York that would entitle it otherwise to be sued therein.

■ Contention also has been made that said section 94 should be construed as limited to suits for usury, as provided for in section 86 of said chapter 2 (12 U.S. C.A. § 86). This contention has its basis in the fact that the Revised Statutes of 1873 omitted therefrom section 57 of the National Bank Act of 1864, 13 Stat. 116, said section 57 corresponding to said section 94 of title 12, chapter 2 of the United States Code adopted in 1925 (12 U.S. C.A. § 94). By an act entitled, "An act to correct errors and to supply omissions in the Revised Statutes of the United States," 18 Stat. 320, section 5198 of the Revised Statutes dealing with the subject of usury, and being the same as section 30 of the said act of 1864 (13 Stat. 108), was amended by adding thereto the omitted provisions of said section 57 relating to the venue of suits, but changing the expression in the section "under this act" to read "under this title." The title referred to is title 62, c. 3, "National Banks." The construction contended for would have the word "Title" mean section. Even if we were now considering the provision as it appears in the Revised Statutes, we think the contention could not be sustained. While not expressly passing on the contention here made, this view finds support in the case of First Nat. Bank v. Morgan, supra, and in Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52. We are here, however, dealing with the United States Code of 1925, and in that Code the several matters in question are dealt with in separate sections as in the act of 1864, being sections 86 and 94 of title 12, chapter 2, 44 Stat. part 1, pp. 264, 265 (12 U.S.C.A. §§ 86, 94). It is clear that said section 94 of the Code is not

restricted to suits of the character referred to in said section 86.

■ The law appears to be well settled that a national bank may not be sued without its consent in a court outside the state of its domicile. See, also, Cadle v. Tracy, 11 Blatchf. 101, 4 Fed.Cas. 967, No. 2,279; Main v. Second Nat. Bank, 6 Biss. 26, 16 Fed.Cas. 509, No. 8,976; Crocker v. Marine Nat. Bank, 101 Mass. 240, 3 Am.Rep. 336; Morse on Banks and Banking (6th Ed.) vol. 2, p. 1922; Mitche on Banks and Banking, vol. 7, p. 316.

The question of venue appears to be so clear that it is deemed unnecessary to pass upon the other questions raised upon the motion.

The motion to dismiss is granted.